| | |
|---|---|
| CYNTHIA BECKLER,<br>*f/k/a Cynthia Roers*, | Civil No. 14-215 (JRT/TNL) |
| Plaintiff, | **FINDINGS OF FACT,**<br>**CONCLUSIONS OF LAW AND** |
| v. | **ORDER FOR JUDGMENT** |
| BANK OF AMERICA, | |
| Defendant. | |

Beau D. McGraw, **MCGRAW LAW FIRM, PA**, 10390 Thirty-Ninth Street North, Lake Elmo, MN 55042, for plaintiff.

Kathryn J. Bergstrom, **GRAY PLANT MOOTY, PA**, 80 South Eighth Street, Suite 500, Minneapolis, MN 55402, for defendant.

Plaintiff Cynthia Beckler, formerly known as Cynthia Roers, filed this action in 2014 to quiet title on three real properties. Beckler seeks to void three mortgages held by Defendant Bank of America ("BOA") on those properties. The Court conducted a bench trial on January 30 and 31, 2017 and the parties provided final written submissions between March 17 and April 5, 2017. Having considered each party's evidence, exhibits, and arguments of counsel, the Court enters the following Findings of Fact, Conclusions of Law, and Order for Judgment, pursuant to Fed. R. Civ. P. 52(a)(1).

### FINDINGS OF FACT[1]

**1.** All of the Findings of Fact set forth herein are undisputed or have been proved by a preponderance of the evidence.

---

[1] During the two-day bench trial, the parties presented evidence on myriad issues. The Court discusses only those facts relevant to determining the merits of Beckler's claim. Additionally, to the extent a trial exhibit or testimony used Beckler's previous name "Cynthia Roers," the Court construes it to refer to Beckler.

2. To the extent the Court's Conclusions of Law include what may be considered Findings of Fact, they are incorporated herein by reference.

**I. THE PARTIES**

3. Beckler is a Minnesota resident. (Tr. 114:17-18[2]; Notice of Removal, Ex. A ("Compl.") ¶ 3, Jan. 23, 2014, Docket No. 1.) Beckler owns real estate in Minnesota and in Mexico. (Ex. 24 ¶¶ 17-20.)[3]

4. Beckler owns three properties at issue: 7485 Kingswood Road in Minnetrista, Minnesota (the "Kingswood Property"), and 5412 and 5416 Benton Avenue in Edina, Minnesota (the "Benton Avenue Properties"). (Tr. 115:12-117:8.) The Court will refer to these three properties as the "Non-Marital Properties."

5. BOA is a national banking association organized under United States law with its primary office in Charlotte, North Carolina. (Notice of Removal ¶ 20.) BOA is the successor-in-interest to Countrywide Bank and now holds three mortgages on the Non-Marital Properties originated by Countrywide Bank. (Tr. 242:18-243:6.)

**II. MARRIAGE TO ALAN ROERS**

6. Beckler married Alan Roers in November 2005. (Tr. 117:9-14.)

7. Beckler acquired the Non-Marital Properties prior to marrying Roers. (Tr. 117:15-19.)

---

[2] All citations to "Tr." refer to the transcript of the trial that was conducted on January 30 and 31, 2016. (Tr. of Trial, Vols. I-II, Feb. 17, 2017, Docket Nos. 69-70.)

[3] All citations to "Ex." refer to the exhibits introduced at trial. (*See* Trial Ex. List, Jan. 31, 2017, Docket No. 66.) To indicate a page number within an exhibit, the Court uses internal pagination but omits extraneous digits. For example, the Court would cite to "00002" as "2."

**8.** After their marriage, Beckler and Roers lived together at the Kingswood Property. (Tr. 69:12-14.)

**9.** In March 2006, Beckler transferred title in the Kingswood Property from her name to Beckler and Roers jointly for the purpose of refinancing the mortgage on the property. (Tr. 69:15-70:2.)

### III. 20 COUNTRY ROAD 20 PROPERTY

**10.** In June 2006, Beckler was interested in purchasing a ranch home located at 20 County Road 20 in Minnetrista, Minnesota (the "20-20 Ranch"). (Tr. 119:12-121:10.) After viewing the property, she called Roers and told him the property was "unreal." (Tr. 121:11-14.) As a result, Roers began preparing to purchase the home. (Tr. 121:15-17.)

**11.** In July 2006, Roers entered into a purchase agreement on 20-20 Ranch for $4,100,000, (Tr. 32:19-33:5), and Roers attempted to obtain financing from August to December 2006, (Tr. 151:8-11).

**12.** Jodi Ennen of Countrywide Bank served as the mortgage broker for the 20-20 Ranch. (Tr. 31:12-20.) Ennen suggested that Beckler encumber the Non-Marital Properties to provide financing for the 20-20 Ranch. (Tr. 165:12-168:5.) Beckler believed that after the closing, she could sell the front twenty acres of the 20-20 Ranch to pay off those encumbrances. (Tr. 167:15-168:5.) Ennen also instructed Beckler that if she did not act quickly, the 20-20 Ranch purchase would fall through. (Tr. 168:15-23.)

**13.** In late fall of 2006, Roers contacted Katherine Melander – a real estate attorney who had worked with Roers for a number of years – and explained that he and Beckler were purchasing the 20-20 Ranch but would be unable to attend the closing; thus,

Roers requested Melander sign on his and Beckler's behalf. (Tr. 102:1-103:7.)

14. Beckler stated in a 2011 deposition in a different case that she agreed to mortgage the Non-Marital Properties to provide financing for the 20-20 Ranch, though at trial Beckler stated she did not remember making that statement in her deposition. (Tr. 162:19-165:6, 168:6-169:16.)

15. On December 20, 2006, Beckler transferred title of the 5416 Benton Avenue Property and the 5412 Benton Avenue Property from her name to her and Roers jointly. (Ex. 3 at 2-5; Ex. 7 at 4-7.)

16. Robert Rodine – a credit manager for Roers's former company – notarized Beckler's signature on those transfer-of-deed forms. (Tr. 216:8-15, 217:15-17; Ex. 3 at 2-4; Ex. 7 at 4-6.)

17. At trial, Rodine could not recall whether Beckler signed the transfer-of-deed forms in his presence or whether he studied Beckler's license before he notarized the forms. (Tr. 221:13-222:13, 222:23-223:10.)[4] However, Rodine testified that he had no reason to believe he did not follow his normal process of first confirming Beckler's identity by reviewing her driver's license and then witnessing and notarizing her signature. (Tr. 219:11-220:8, 222:14-22, 223:11-14.) The Court concludes that Rodine reviewed Beckler's documentation of her identity and witnessed her signing the forms before notarizing the forms.

---

[4] Although Rodine was examining Exhibits 1 and 5 during this testimony, those Exhibits are the same as Exhibit 3 at 2-4 and Exhibit 7 at 4-6, respectively.

**18.** Also on December 20, 2006, Beckler and Roers granted Katherine Melander power of attorney with respect to each of the Non-Marital Properties. (Ex. 2; Ex. 6; Ex. 11 at 1-14.)

**19.** Rodine also notarized Beckler's signature on the power-of-attorney forms on December 20, 2006. Similarly, Rodine had no reason to believe he did not follow his normal process before notarizing the forms. (Ex. 2; Ex. 6; Ex. 11 at 8-10; Tr. 223:15-225:9.) The Court concludes that Rodine reviewed Beckler's documentation of her identity and witnessed her signing the forms before notarizing the forms.

**20.** On December 29, 2006, Katherine Melander, acting as attorney in fact for Beckler and Roers, executed a mortgage and related instruments on each of the Non-Marital Properties, resulting in an encumbrance of $350,000 on each of the Benton Avenue Properties and an encumbrance of $446,800 on the Kingswood Property. (Ex. 3 at 20-39; Ex. 7 at 22-41; Ex. 11 at 15-25; Tr. at 75:9-18.)

**21.** Melander, acting as attorney in fact for Roers and Beckler, used the proceeds from the three mortgages to purchase the 20-20 Ranch and closed on the 20-20 Ranch on December 30, 2006. (Tr. 94:6-23, 106:2-11, 107:20-23; Ex. 24 ¶ 14.)

**22.** Roers and Beckler were in Mexico during the closing. (Tr. 73:10-12.) They moved into the 20-20 Ranch in early January 2007. (Tr. 73:25-74:2.)

**IV.   LITIGATION INVOLVING THE 20-20 RANCH AND CANCER**

**23.** In April 2007, Beckler and Roers filed an action in Hennepin County District Court alleging the 20-20 Ranch seller and broker misrepresented the true acreage

of the property. (Tr. 156:25-157:9.)[5]

24. Between late 2007 through 2009, Beckler was diagnosed with eye cancer, nose cancer, and mouth cancer. (Tr. 137:22-138:11, 154:2-8.) Beckler was not treated with chemotherapy for those cancers, but instead took an oral medication and underwent reconstructive surgery. (Tr. 154:9-15.)

25. In June 2009, during the pendency of the Hennepin County case, Beckler and Roers divorced. (Tr. 60:5-7; Ex. 24.) In the divorce decree, Beckler acknowledged that she contributed equity in her Non-Marital Properties towards the down payment of the 20-20 Ranch. (Ex. 24 ¶ 6; Tr. 62:20-25.)

26. The state court conducted a trial regarding the true acreage of the 20-20 Ranch in March 2010. (Ex. 26 at 1; Tr. 157:6-9.) During the trial, Beckler testified that she and Roers encumbered her Non-Marital Properties to finance the purchase of the 20-20 Ranch, (Ex. 26 at 75-76; Tr. 157:16-158:23). Beckler also testified that she signed the power of attorney form so that Melander could attend the closing. (Ex. 26 at 78.)

27. In May 2010, Beckler was diagnosed with breast cancer, (Tr. 138:8-16), and subsequently underwent chemotherapy and radiation treatments, (Tr. 138:19-21).

28. In 2010, Beckler and Roers filed an action in this district to invalidate the mortgage on the 20-20 Ranch based on mutual mistake. (Tr. 87:8-20, 132:7-10, 162:19-23.) In that action, Beckler maintained that she executed the mortgages to finance the 20-20 Ranch. (Tr. 88:8-19.)

29. In October 2013, Roers called for a meeting with Beckler, her counsel, and

---

[5] Beckler and Roers also filed a separate state action in 2007 alleging the 20-20 Ranch suffered from mold intrusion. (Tr. 86:13-20; 155:20-156:24.)

counsel for Bank of America to discuss the mortgages. (Tr. 64:4-65:12.) At that meeting, Roers stated for the first time that he forged Beckler's name on the December 2006 transfer-of-deeds and power-of-attorney forms used to encumber the Non-Marital Properties. (Tr. 64:20-24, 65:13-19.)

30. In December 2013, Beckler filed an action to quiet title on the Non-Marital Properties, in which she alleged Roers forged her signature on the forms and that he manipulated and abused her in such a fashion as to believe she signed the forms. (Compl. ¶¶ 1-15.)

31. The Court concludes that Roers did not forge Beckler's signature on the transfer-of-deeds and power-of-attorney forms used to encumber the Non-Marital Properties.

32. The Court concludes that Beckler signed her own name on the transfer-of-deeds and power-of-attorney forms used to encumber the Non-Marital Properties.

## CONCLUSIONS OF LAW

Beckler contends she is entitled to quiet title and void the three mortgages held by BOA on the Non-Marital Properties because Roers fraudulently encumbered those properties to close on the 20-20 Ranch. Minnesota Statute section 559.01 governs a quiet title action. *Otremba v. CitiMortgage, Inc.*, No. 13-871, 2013 WL 6388461, at *5 (D. Minn. Dec. 6, 2013) (citing to Minn. Stat. § 559.01 as the "quiet title statute"). The statute provides in pertinent part that:

> Any person in possession of real property personally . . . or any other person having or claiming title to vacant or unoccupied real property, may bring an action against another who claims an estate or interest therein, or a

lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively.[6]

"[A]n agreement to give a real estate mortgage is within the statute of frauds." *Hecht v. Anthony*, 283 N.W. 753, 754 (Minn. 1939). The statute of frauds requires a signature appear on the "writings containing the essential elements of the agreement," *Malevich v. Hakola*, 278 N.W.2d 541, 544 (Minn. 1979) and "[i]t is a general rule that fraud renders voidable everything into which it enters," *Turner v. Edwards*, 292 N.W. 257, 260 (Minn. 1940). Thus, if Roers forged Beckler's signature on the transfer-of-deeds and power-of-attorney forms to effectuate mortgages on the Non-Marital Properties, then Beckler could void those encumbrances. *See e.g.*, *CitiMortgage, Inc. v. Akers*, 858 N.W.2d 788, 794 (Minn. 2014) (voiding mortgage on the grounds that husband forged wife's signature on power-of-attorney document used to convey the mortgage); *see also Gores v. Schultz*, 777 N.W.2d 522 (Minn. Ct. App. 2009) (stating the "general rule" that "forgery renders an instrument void").

Nonetheless, the Court finds in December 2006, Beckler signed her own name on the transfer-of-deeds and power-of-attorney forms, and therefore BOA's mortgages on the Non-Marital Properties are valid.

First, Beckler's actions and testimony regarding the mortgages are inherently contradictory. Beckler asserts she moved out of the 20-20 Ranch and moved to Mexico in 2007 after she found out about the encumbrances on the Non-Marital Properties.

---

[6] Neither of the parties offered any explanation as to whether Beckler's ownership of the Non-Marital Properties means "possession" of those properties, nor did the parties offer any argument as to whether Beckler now claims title to "vacant or unoccupied real propert[ies]" within the meaning of the quiet title statute. Nonetheless, these issues are rendered moot as the Court finds that Beckler, and not Roers, executed Beckler's signature on the transfer-of-deeds and power-of-attorney forms.

(Tr. 155 at 6-19.) However, during the divorce proceeding in 2009, she acknowledged encumbering the Non-Marital Properties to purchase the 20-20 Ranch, and in the 2010 state court proceeding, she again testified that she agreed to encumber the Non-Marital Properties in order to purchase the 20-20 Ranch. Beckler's actions in 2009 and 2010 undercut her present allegation that she left for Mexico in 2007 disgruntled that Roers encumbered the Non-Marital Properties without her consent.

Second, although the Court in no way trivializes that Beckler suffered from serious bouts of cancer, Beckler's chemotherapy could not have affected certain previous testimony. Beckler contends when she discovered the encumbrances on her Non-Marital Properties in 2007, Roers badgered and manipulated her into believing that she did in fact sign the documents and that her cancer treatments rendered her vulnerable to his coercive tactics.[7] However, Beckler was not diagnosed with breast cancer, for which she received chemotherapy treatment, until sometime after May 2010 – well after the 2009 divorce proceeding and after Beckler's March 2010 testimony in the state-court proceeding. Thus, such treatment could not have affected her previous testimony. Furthermore, Beckler did not specifically testify that her nose, eye, or mouth cancers between late 2007 and 2009 – which required reconstructive surgery and an oral medication – affected her March 2010 testimony. (Tr. 170:9-19; *see also* Tr. 193:23-197:15.) The Court cannot ignore the plain fact that until now, Beckler never testified that she simply did not recall encumbering the Pre-Marital Properties in 2006. (*See* Tr. 159:20-25, 161:12-17.)

---

[7] It is also unclear to the Court how Roers could have exerted such influence over Beckler if she left him and moved to Mexico in 2007 and was not habitually conversing with him. (Tr. 142:8-13; 155:3-19, 252:19-24.)

Third, Rodine notarized all relevant documents after checking Beckler's identity documents and the Court found his testimony credible. Lastly, despite their divorce and Roers's alleged abuse and fraud, Roers and Beckler remain friendly and periodically visit each other. (Tr. 96:20-97:11.) Surreptitiously, only after the criminal statute of limitations appears to have ran,[8] did Roers profess his purported fraud to Beckler in October 2013. (Tr. 64:19-65:3.) The Court finds Roers's testimony that he forged Beckler's signature to be not credible.

In conclusion, the Court finds that Beckler signed the transfer-of-deeds and power-of-attorney forms and that Beckler cannot void the BOA's mortgages on the Non-Marital Properties.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED that** Plaintiff Cynthia Beckler's request for relief is **DENIED**. The Court declines to void the mortgages held by Defendant Bank of America on the Non-Marital Properties.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: May 24, 2017  
at Minneapolis, Minnesota.

\_\_\_\_\_s/ John R. Tunheim\_\_\_\_\_  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court

---

[8] *See* Minn. Stat. § 541.05, subd. 1(6) (generally providing a six year statute of limitations for an action seeking relief from fraud).